**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 1:25-cr-397 |
| | ) | |
| | ) | |
| Plaintiff, | ) | CHIEF JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | MEMORANDUM OPINION |
| MAURICE J. SINKFIELD, | ) | AND ORDER |
| | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the Court on the motion of defendant Maurice J. Sinkfield ("Sinkfield") to revoke the magistrate judge's detention order. (Doc. No. 22 (Motion to Revoke).) Plaintiff United States of America (the "government") opposes the motion (Doc. No. 37 (Response)), and Sinkfield has replied. (Doc. No. 42 (Reply).) Sinkfield does not seek a hearing in connection with this motion, and because the motion relies primarily upon issues, arguments, and evidence previously before the magistrate judge, the Court finds that the present motion may be considered on the parties' written submissions, the transcript of proceedings, and other record evidence. *See United States v. Boyd*, 484 F. Supp. 2d 486, 48 (E.D. Va. 2007) (the district court need not hold a second hearing but "may base its decision on the transcript of the original detention hearing and any additional evidence proffered by counsel" (citations omitted)). For the reasons that follow, the motion is DENIED.

## I. BACKGROUND

On July 30, 2025, a complaint was signed by a magistrate judge from this judicial district charging Sinkfield with one count of escape, in violation of 18 U.S.C. § 751(a). (Doc. No. 1

(Complaint).) The complaint was supported by an affidavit sworn by Deputy United States Marshal Madison C. Snider. (Doc. No. 1-1 (Affidavit).) In her affidavit, Deputy Marshal Snider averred that, on November 17, 2017, United States District Judge Donald C. Nugent sentenced Sinkfield to a custody term of 110 months, following a jury trial in which Sinkfield was convicted of assault on an officer/employee of the United States in violation of 18 U.S.C. § 111(a)(1). (*Id*. at 3[1] ¶ 7; *see* N.D. Ohio Case No. 1:16-cr-146, Doc. No. 98 (Judgment).) The affidavit further averred that, while Sinkfield was still in the custody of the attorney general, Sinkfield was transferred from FCI Talladega to the Oriana Halfway House ("Oriana House"), in Cleveland, Ohio. (Doc. No. 1-1, at 3 ¶ 8.) On July 24, 2025, Sinkfield left Oriana House and went to a convenience store where he was observed by Cleveland Police Task Force Officers to be unlawfully in possession of a firearm with a magazine. (*Id*. ¶ 9.) As the officers approached, Sinkfield became uncooperative and attempted to dispose of the firearm and magazine. (*Id*.) Following his arrest, Sinkfield was returned to Oriana House later that evening (July 24, 2025). (*Id*.)

On July 25, 2025, at approximately 5:40 a.m., video footage from Oriana House showed Sinkfield leaving the facility without permission or authorization. (*Id*. ¶ 10.) After failed attempts by the Bureau of Prisons ("BOP") Residential Reentry Center to contact Sinkfield, the BOP placed Sinkfield on escape status and notified the United States Marshals Service. (*Id*. at 3–4 ¶ 11.) On July 30, 2025, United States Magistrate Judge Jennifer Dowdell Armstrong issued an arrest warrant and complaint for Sinkfield in connection with his escape from BOP custody. (Doc. No. 2 (Arrest Warrant).)

---

[1] All page number references herein are to the consecutive page numbers applied to each individual document by the Court's electronic filing system.

On August 7, 2025, deputy marshals contacted Sinkfield and convinced him to surrender, which he did later that day when he presented himself at the United States District Courthouse in Cleveland, Ohio, and was thereafter detained for processing. (Doc. No. 37, at 3.) During the booking process, Sinkfield refused to comply with basic requests, including that he submit himself for fingerprinting. (*Id.*; *see* Doc. No. 5 (Motion for Order Authorizing Means Necessary for Processing), at 3.) Even after the deputy marshals received authorization to use multiple deputies, Sinkfield continued to refuse to comply and the deputy marshals were unable to complete Sinkfield's processing. (Doc. No. 5, at 3.) On August 8, 2025, the government filed a motion for an order authorizing the United States Marshal to process and transport Sinkfield by any means necessary. (*See id.*)

At Sinkfield's arraignment (also on August 8, 2025), the magistrate judge appointed the Federal Public Defender's Office/Attorney Alvero DeCola to represent Sinkfield. (Minutes of Proceedings [non-document], 8/8/2025; *see* Order Appointing Assistant Federal Public Defender ("FPD") Alvaro L. DeCola, 8/8/2025.) During the arraignment, the government moved for detention. Sinkfield was remanded to the custody of the U.S. Marshals and a detention hearing was set. (Minutes of Proceedings, 8/8/2025.)

On August 13, 2025,[2] the magistrate judge held hearings on the government's motions for detention and for an order authorizing any means necessary to process Sinkfield. At the conclusion of the hearing on the government's motion relating to Sinkfield's processing, Sinkfield finally agreed to be fingerprinted. (Doc. No. 35 (Transcript of Hearing on Motion for Order), at 9.)

At the detention hearing, the government proffered that Sinkfield escaped from custody

---

[2] Prior to the hearings on August 13, 2025, Assistant FPD Darin Thompson entered an appearance on behalf of Sinkfield, replacing Assistant FPD DeCola as counsel. (Doc. No. 6 (Notice of Appearance).)

within 24 hours of being found in possession of a firearm, ammunition, and ballistics body armor. (Doc. No. 32 (Transcript of Preliminary and Detention Hearing), at 19.) The government also highlighted the fact that Sinkfield had three prior capiases issued for his arrest based on his failure to appear as required for hearings in criminal cases, demonstrating a failure to comply with court orders. (*Id.*) Additionally, the government relied on the difficulties and delay associated with contacting Sinkfield after his escape, and his repeated refusals to cooperate with the booking process in this case. (*See generally id.* at 18–21.) Based on this proffer, coupled with Sinkfield's prior criminal record that included a robbery with a firearm specification and the aforementioned assault on a federal officer, the government argued that there were no conditions that would secure Sinkfield's appearance or protect the community. (*Id*. at 20; *see id*. at 22.) Sinkfield did not proffer any evidence or call any witnesses at the hearing. (*Id*. at 21.) In closing argument, defense counsel noted that Sinkfield disputed that he possessed a firearm or body armor, that he has a job and a stable place to live with his girlfriend, and that he eventually agreed to be fingerprinted after his arrest and a hearing. (*Id*. at 23–24.) Defense counsel asked the magistrate judge to consider house arrest and an ankle monitor so that Sinkfield could continue his employment. (*Id*.) At the conclusion of the hearing, the magistrate judge took the motion for detention under advisement. (*Id*. at 27.)

In her order of detention, the magistrate judge first (properly) observed that there was no rebuttable presumption of detention. 18 U.S.C. § 3142(f)(2). (*See* Doc. No. 8 (Detention Order), at 1–2.) After considering the evidence proffered at the hearing, the magistrate judge determined that the government had proven by clear and convincing evidence that no condition or combination of conditions of release will reasonably assure the safety of any other person and the community. (*Id*. at 3.) She found that the government had also proven, by a preponderance of the evidence, that

4

no condition or combination of conditions of release will reasonably assure the defendant's appearance as required. (*Id.*) In reaching these conclusions, the magistrate judge relied upon findings that the weight of evidence against Sinkfield was strong; Sinkfield had a prior criminal history, which included a history of violence or use of weapons; he had prior probation, parole, or supervised release violations; he had prior failures to appear in court as ordered; he participated in criminal activity while on probation, parole or supervision; and his release posed serious danger to any person or the community. (*Id.*).

As further explanation or justification for her detention order, the magistrate judge held that:

(1) 18 U.S.C. [§] 3142(g)(1): In 2016, Mr. Sinkfield was sentenced to 110 months in jail for assault with a deadly and/or dangerous weapon on an officer of the United States. In December 2024, Mr. Sinkfield was transferred from prison to custody at Oriana Halfway House. On July 24, 2025, the Government proffered that law enforcement observed that Mr. Sinkfield was in possession of a firearm in a convenience store. The Government further proffered that Mr. Sinkfield tried to dispose of the firearm and magazine, and he became combative with officers while they placed him under arrest. The officers released Mr. Sinkfield back to Oriana House that evening. Early the next morning on July 25, 2025, video footage shows that Mr. Sinkfield walked out of Oriana House without permission or authorization. Mr. Sinkfield eventually turned himself in at the courthouse and was arrested on July 30, 2025. He is now charged with one count of Escape in violation of 18 U.S.C. [§] 751(a). This factor weighs heavily in favor of detention based on risk of flight and danger to the community.

(2) 18 U.S.C. [§] 3142(g)(2): In addition to the instant offense, the Pretrial Services Report reflects Mr. Sinkfield's history of probation violations/revocations (in 11/14/2002 and 12/19/2003), warrant/finding of contempt (in 9/1/2009, 3/24/2010, and 8/2/2010), or failure to appear at court proceedings (1/17/2003, 9/30/2015, and 4/6/2016). Mr. Sinkfield also has a history of violence. Specifically, Mr. Sinkfield was twice convicted of domestic violence (in 2001 and 2002) and twice convicted for violations of protection orders (in 2002 and 2003). He was also convicted for robbery with a firearm specification (in 2012), where he fired a gun at the scene of the robbery, 33 rounds of ammunition were collected at the scene, and he had to be ordered to the ground at least three times before he complied and was arrested. And he was convicted for assault on a federal officer with a deadly and/or dangerous weapon (in 2016). Accordingly,

5

this factor weighs in favor of detention based on risk of flight or danger to the community or others.

(3) 18 U.S.C. [§] 3142(g)(3): The Court recognizes that Mr. Sinkfield is a lifelong resident of Ohio, has strong family ties, and that he is employed. But these positive factors are outweighed by the nature of the instant offense, a history of failure to appear, numerous failures to comply with past court orders, and a history of violence. This factor therefore weighs heavily in favor of detention based on risk of flight and danger to the community or others.

(4) 18 U.S.C. [§] 3142(g)(4): For the reasons set forth above, this factor weighs heavily in favor of detention based on danger to the community or others.

(*Id*. at 4.)

On August 19, 2025, a federal grand jury sitting in the Northern District of Ohio returned a two-count indictment charging Sinkfield with being a felon in possession of a firearm and ammunition, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(8), and escape from custody, in violation of 18 U.S.C. § 751(a). (Doc. No. 10 (Indictment).) In support of the felon in possession charge, the indictment identified Sinkfield's prior federal conviction in 2017 for assault with a deadly weapon on a federal officer/employee and his 2012 state court conviction for robbery. (*Id*. at 1.).

On February 18, 2026, the Court conducted a hearing on Sinkfield's motion to suppress. (Minutes of Proceedings [non-document], 2/18/2026; *see* Doc. No. 23 (Motion to Suppress).) During the hearing, the government introduced, among other exhibits, a clip from one of the arresting officer's body cameras that recorded Sinkfield's July 24, 2025 arrest. At the conclusion of the hearing, the Court took the motion to suppress under advisement.

A final pretrial conference is scheduled in this matter for April 7, 2026, and a jury trial is set to begin the week of May 11, 2026. (Doc. No. 26 (Order to Continue - Ends of Justice).)

## II. TIMELINESS

Before the Court can consider the merits of Sinkfield's motion to revoke, it must address the government's timeliness argument. Title 18 U.S.C. § 3145(b) permits a defendant to seek review of a pretrial detention order of a magistrate judge. The government argues that Sinkfield may not take advantage of § 3145(b) because he did not file his motion within 14 days from the date of the magistrate judge's order. (Doc. No. 37, at 1, 6–8.)

Under Rule 59(a) of the Federal Rules of Criminal Procedure, a defendant may serve and file objections to a magistrate judge's non-dispositive order within 14 days after being served with a copy of the magistrate judge's order. Fed. R. Crim. P. 59(a). Upon the filing of timely objections, a district court must consider whether any part of the magistrate judge's order should be modified or set aside. *Id*. The rule further provides that "[f]ailure to object in accordance with this rule waives a party's right to review." *Id*.

Courts have applied Rule 59(a) to magistrate judges' detention orders and have held that "[a] defendant's right to have the court with original jurisdiction review a detention order is waived if the appeal is not taken within fourteen days as dictated by Fed. R. Crim. P. 59(a)." *United States v. Alhallaq*, No. 5:25-cr-309, 2026 WL 177624, at *2 (N.D. Ohio Jan. 21, 2026) (citing *United States v. Dawson*, No. 4:19-cr-206, Doc. No. 201 (Opinion and Order), at 2 (N.D. Ohio June 12, 2020)); *see United States v. Jordon*, No. 3:22-cr-128, 2023 WL 2481475, at *1 (S.D. Miss. Mar. 13, 2023) (citations omitted); *United States v. Bell*, No. 08-cr-87, 2008 WL 11411709, at *1 (C.D. Cal. June 6, 2008) (citing *United States v. Tooze*, 236 F.R.D. 442, 444–45 (D. Ariz. 2006)). "Any review by the district court following such a waiver is discretionary and not a matter of right." *Tooze*, 236 F.R.D. at 446.

In this case, the magistrate judge issued her detention order on August 18, 2025. (Doc. No. 8.) Defendant filed the present motion on January 22, 2026, 158 days after the detention order was

7

issued. (*See* Doc. No. 22.) While Sinkfield clearly missed the 14-day period for review, the Court retains discretion to review the decision if it chooses to do so, and the Court will do so in this case. *See Tooze*, 236 F.R.D. at 445–46 ("District courts retain authority to review release decisions by magistrate judges notwithstanding the waiver provision of Rule 59(a)."); *see also* Fed. R. Crim. P. 59(a) Advisory Committee Notes ("Despite the waiver provisions, the district judge retains the authority to review any magistrate judge's decision or recommendation whether or not objections are timely filed").

### III.     MERITS DISCUSSION

When the Court "acts on a motion to revoke or amend a magistrate's detention order, [it] acts *de novo* and must make an independent determination of the proper pretrial detention or conditions for release." *United States v. Rueben*, 974 F.2d 580, 585 (5th Cir. 1992) (citation omitted). As part of its *de novo* review, the Court has reviewed the following:

(1) the complaint (Doc. No. 1);

(2) the affidavit supporting the complaint (Doc. No. 1-1);

(3) the motion for an order regarding processing (Doc. No. 5);

(4) the pretrial services report (Doc. No. 7, sealed);

(5) the magistrate judge's order of detention (Doc. No. 8);

(6) the indictment (Doc. No. 10);

(7) the transcript from the detention hearing (Doc. No. 32);

(8) the transcript from the hearing on the motion regarding processing (Doc. No. 35); and

(9) the parties' briefing on the motion to revoke detention (Doc. Nos. 22, 37, 42).[3]

---

[3] To the extent relevant to the present motion to revoke, the Court also considered the evidence offered during the February 18, 2026 hearing on the motion to suppress.

8

As explained more thoroughly below, the Court, having conducted its *de novo* review, finds that the government presented clear and convincing evidence that no condition or combination of conditions exist that would reasonably ensure the safety of the community. Further, the government demonstrated by a preponderance of the evidence that no conditions or combination of conditions exist that would assure the appearance of Sinkfield.

As he did at the detention hearing, Sinkfield relies upon his employment and his then-girlfriend and now fiancée's offer to permit him to live with her. (Doc. No. 22, at 3.) Additionally, he reiterates that he was in contact with the U.S. Marshals at some point during his alleged escape and he turned himself in days later. (*Id.*) Sinkfield further emphases his strong ties to the area, which include his parents, and six children (who live with their respective mothers) with whom he maintains he has regular contact. (*Id.*)

But Sinkfield also takes issue with the magistrate judge's conclusion that he has a "history of failure to appear, [and] numerous failures to comply with past court orders[.]" (*Id.* (citing Doc. No. 8, at 4).) According to Sinkfield, "[e]ach of these contempt findings related to unpaid fines and costs." (*Id.* at 4 (citing state court dockets).) He also challenges the magistrate judge's finding that he failed to appear for court on September 30, 2025, noting that, instead, a capias was issued for a probation violation. (*Id.*) He also challenges the magistrate judge's finding that he failed to appear in state court on April 6, 2016, noting that this only occurred because he was in federal custody on the 2016 assault of a federal officer charge. (*Id.*) Moreover, Sinkfield insists that the government and the magistrate judge mischaracterized his behavior during his arrest as "combative." He argues that "[t]he bodycam footage shows Mr. Sinkfield exiting the vehicle and being tackled to the ground without any further resistance." (*Id.* (citing Ex. C. (Bodycam Footage)).) Ultimately, Sinkfield concludes that there are conditions that will assure his

appearance and the community's safety, including: a third party custodian, a requirement that he maintain employment, regular reporting to pretrial services, a curfew, a prohibition on possessing a firearm, and location monitoring. (*Id*. at 4–5.)

The government opposes Sinkfield's release and (again) relies upon information contained in the complaint affidavit relating to Sinkfield's behavior at the time of his arrest, including ignoring officer commands and re-entering his vehicle and attempting to place a black object believed to be a firearm in the console of his car. (Doc. No. 37, at 2.) Added to this, the government notes that Sinkfield was found in possession of a firearm, ammunition, and body armor; that he left his facility without permission less than 12 hours after he was arrested and resisted initial efforts to return him to custody; and that he has continued to be non-compliant while in custody. (*Id.* at 3–4.) It also highlights the fact that Sinkfield was under a criminal justice sentence when he committed the charged offenses and that he has a history of violence dating back to 2001, including convictions for domestic violence and robbery with a firearm. (*See generally* Doc. No. 37.) The government is also adamant that neither it nor the magistrate judge mischaracterized Sinkfield's behavior or conduct during his arrest. (*Id.* at 11.) Rather, Sinkfield's documented behavior at the time of arrest and in the days and weeks that followed was consistent with his history of ignoring or failing to comply with court orders and conditions of confinement, rendering him ill-suited for pretrial release. (*See id*. at 13.)

The Court agrees with the government. Even if the Court credits each of Sinkfield's challenges to the magistrate judge's findings regarding his criminal history, the record as a whole still paints a picture of someone who is a danger to the community and is unable or unwilling to comply with orders from law enforcement and the courts, which translates into a clear flight risk. Beginning with the nature and circumstances of the charged offenses, *see* 18 U.S.C. § 3142(g)(1),

10

the Court agrees with the magistrate judge that the circumstances surrounding the present charges weigh heavily in favor of detention based on the risk of flight and the danger to the community. Sinkfield is charged with unlawfully possessing a firearm and ammunition while under a disability. He is alleged to have done so while still serving a custody term for assault on a federal officer. His continued possession of weapons, even while under a disability and in custody, speaks volumes on the danger he poses to others and the community.

Sinkfield is also charged with the crime of escape from federal custody, which he is alleged to have committed within 12 hours of his arrest on the weapons offense. Even if the Court disregards the deputy marshal's characterization in the supporting affidavit that Sinkfield was "combative" during his arrest (*see* Doc. No. 1-1, at 3 ¶ 9), the record (including bodycam footage from the arrest and surveillance video from Oriana House the following day) still supports a finding that he was uncooperative with officers at the scene,[4] that he left his facility without permission, that he remained at large for several days, requiring the deputy marshals to make several attempts to convince him to turn himself in, and that even once in custody, he failed to comply with deputy marshals' orders during processing. All of these record facts support a finding that Sinkfield is unlikely to comply with bond restrictions or otherwise appear as directed by the Court.

---

[4] Sinkfield says that the bodycam footage from the arrest "shows Mr. Sinkfield exiting the vehicle and being tackled to the ground without further resistance." (*See* Doc. No. 22, at 4.) But, prior to him exiting the vehicle, the same bodycam footage shows Sinkfield repeatedly ignoring officers' commands to show his hands and refrain from accessing the vehicle's center console, commands which the officers were forced to shout with their weapons drawn. (Gov. Ex. 4 (Bodycam from Arrest Scene).) The footage also shows officers breaking Sinkfield's driver-side car window before he "voluntarily" exited the vehicle. (*Id.*) While there may have come a point where Sinkfield stopped resisting, it can hardly be said that his arrest was without incident. And this behavior is part of a larger history of dangerous interactions with police. Prior to his arrest on the 2012 robbery charge, Sinkfield fired 33 rounds of ammunition at the scene and then fled. When police finally located him, Sinkfield "had to be ordered to the ground at least three times before he complied and was arrested." (Doc. No. 7, at 9.)

Similarly, the weight of the evidence against Sinkfield, *see* 18 U.S.C. § 3142(g)(2), strongly favors continued detention based on the danger posed to the community and a risk of flight. The Court recognizes that this factor relates to the weight of the evidence of dangerousness or flight, not to the weight of the evidence of defendant's guilt. *See United States v. Stone*, 608 F.3d 939, 948 (6th Cir. 2010) (citation omitted). Sinkfield's recent failures to comply with law enforcement both before and after his arrest are consistent with a history that includes a failure to appear for court or for jail as instructed, multiple failures to pay fines, and probation violations. (*See generally* Doc. No. 7.) Given this history, as reinforced by recent events, the Court has little confidence that Sinkfield would appear as scheduled for court proceedings or otherwise comply with bond requirements.

The weight of the evidence as to dangerousness is also troubling. Sinkfield has a criminal history that began when he was only 14 years old. Among his adult convictions are numerous violent crimes, including robbery, illegal conveyance of weapons to a detention facility, domestic violence, violations of protection orders, and assaulting a federal officer. (Doc. No. 7, at 4–10.) The robbery and assault on a federal officer crimes were made all the more dangerous by the use of deadly weapons (a firearm and a vehicle, respectively). Sinkfield's inability or unwillingness to refrain from possessing firearms or using other dangerous weapons counsels in favor of continued detention.

The Court has considered Sinkfield's personal history and characteristics, including his family ties in the area, his employment, and the possibility of a stable residence. *See* 18 U.S.C. § 3142(g)(3). Nevertheless, the Court shares the magistrate judge's concern that Sinkfield's history of violence and failure to cooperate with authorities, coupled with the circumstances surrounding the present charges that only reinforce this history, outweigh any positive personal characteristics.

This factor, therefore, also favors detention both on the question of flight and dangerousness.

The Court has also considered means less restrictive than detention to ensure Sinkfield's appearance and protect the community, including Sinkfield's suggestions relating to home confinement and electronic monitoring. Yet, the present charges stem from his alleged possession of weapons while in custody and his escape from custody in a halfway house. Given his history of failing to comply with orders or refraining from weapon possession and violence, the Court does not believe that an even less restrictive environment—like home confinement, even with electronic monitoring—would produce a better result. The Court finds that these facts render Sinkfield an especially poor candidate for release on bond pending trial.

## IV.  CONCLUSION

Based on its *de novo* review, the Court finds that the record establishes by the requisite burdens of proof (preponderance of the evidence and clear and convincing evidence, respectively) that no condition or combination of conditions will reasonably assure Sinkfield's appearance as required by the Court and the safety of any other person or the community.

For the foregoing reasons, Sinkfield's motion to revoke the detention order is DENIED.

**IT IS SO ORDERED**.

Dated: March 2, 2026

**HONORABLE SARA LIOI**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**

13